**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE PHOENIX LICENSING LLC, PATENT LITIGATION | ) MDL DOCKET NO. 08-1910-MHM<br>)<br>) **ORDER**<br>)<br>) |

Currently before the Court is the Citi Parties' Motion to Stay pending reexamination of the '434 and '072 Patent. (Dkt. #s 50, 70). After reviewing the pleadings and holding a hearing on February 5, 2009, the Court issues the following Order.[1]

//

---

[1] On February 18, 2009, pursuant to stipulation, the Court dismissed all claims by and against Direct Response Corporation, Warner Insurance Company, and Response Worldwide Insurance Company ("Response Parties"). (Dkt. #s 126, 127). Due to a number of similar dismissals of other parties to this action, only one member case, E.D. Tex. Case No. 2:07-387, which also carries Member Case No. Arizona 08-cv-666, remains pending in the MDL. As such, on February 19, 2009, the remaining parties (Phoenix Licensing, LLC, LPL Licensing, LLC, Countrywide Home Loans, Inc., Countrywide Insurance Services, Inc., and Liberty Life Insurance Company) filed a Motion for Joint Request for Suggestion to Remand (Dkt. #128), asking that the Court issue a Suggestion of Remand to the United States Judicial Panel on Multidistrict Litigation to remand the remaining member case to its transferor court in the Eastern District of Texas. The Court will issue a Suggestion for Remand; that is addressed in a separate Order. However, the Court notes that the remaining parties disagree as to whether, in light of the Request for Suggestion to Remand, this Court should rule on the pending Motion to Stay. Having considered the parties' respective positions, the Court will rule on the Motion, but also notes that the Motion may presumably be reurged, with the permission of the transferor court, if the remaining member case is remanded to the Eastern District of Texas.

## I. BACKGROUND

The Court is currently coordinating pretrial proceedings for cases transferred to it pursuant to 28 U.S.C. § 1407 by the United States Judicial Panel on Multidistrict Litigation. (Dkt. #1). This Multidistrict Litigation ("MDL") involves multiple patent infringement and declaratory judgment actions with respect to three patents[2] owned by Phoenix Licensing, LLC and licensed to LPL Licensing, LLC (collectively, "Infringement Plaintiffs" or "Plaintiffs"). The patents-in-suit involve technologies that allow companies, such as financial and insurance institutions, to perform marketing by automatically preparing client communications relating to financial products and services for the appropriate customers. (Dkt. #58, p.1, n. 1).

On June 20, 2008, Citibank, NA, Citibank USA, NA, Citibank (South Dakota), NA, CitiMortgage, Inc., Citigroup, Inc., Citi Assurance Services, Inc., and Citicorp Credit Services, Inc. (the "Citi Parties"), filed a Motion to Stay the MDL in light of the then-pending ex parte reexamination of the '434 Patent before the United States Patent and Trademark Office ("PTO").[3] (Dkt. #50). As part of that reexamination, on May 16, 2008, the PTO rejected all 160 claims of the '434 Patent in an initial Office Action. (Dkt.

---

[2] United States Patent Nos. 5,987,434 (the "'434 Patent"), 6,076,072 (the "'072 Patent"), and 6,999,938 (the "'938 Patent") (collectively, the "patents-in-suit").

[3] On January 16, 2009, all claims by and against the Citi Parties were dismissed from the MDL. (Dkt. #110). In addition, in September 2008, all claims by and against the Discover Parties (Discover Financial Services, Discover Bank, DFS Services LLC, and Discover Products, Inc.), who joined in the Citi Parties' Motion to Stay (Dkt. #52), were dismissed from the MDL. (Dkt. #82). However, although never officially joining in the Citi Parties' Motion to Stay, the then-remaining Infringement Defendants and Declaratory Judgment Plaintiffs (the Countrywide Parties, Liberty Life Insurance Company, and the Response Parties, the latter of whom have since been dismissed from the MDL) filed a Supplemental Brief Regarding Motion to Stay and Effects of Reexamination on Asserted Claims pursuant to the Court's October 6, 2008 Minute Order directing the Citi Parties and the Infringement Plaintiffs to file supplemental briefs on the Motion to Stay. (Dkt. #84). As such, the Court will construe the Supplemental Brief as a Joinder by the remaining Infringement Defendants (Liberty Life and the Countrywide Parties) to the Citi Parties' still-pending Motion to Stay.

#51, p.2). However, on January 30, 2009, six days before the Court's hearing on the Motion to Stay, and well after completion of briefing on the Motion, the PTO reversed their initial Office Action and issued a Notice of Intent to Issue Ex Parte Reexamination Certificate confirming all 160 claims of the '434 Patent without amendment. (Dkt. #120).

But the Motion to Stay is not moot. On July 23, 2008, the Citi Parties requested that the PTO also conduct ex parte reexamination of the '072 Patent. (Dkt. #89, Ex. D). The PTO granted that request on September 10, 2008. (Id.). The '938 Patent is currently not subject to reexamination.

## II.  LEGAL STANDARD

Courts have the inherent power to control and manage their dockets. Eithicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citing Landis v. North American Co., 299 U.S. 248, 254 (1936)). This power "includ[es] the authority to order a stay pending conclusion of a PTO reexamination." Id. at 1427 (citing Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983)).

"[T]here is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination . . . proceedings." ASCII Corp. v. STD Entertainment USA, Inc., 844 F.Supp. 1378, 1381 (N.D. Cal. 1994) (citations omitted).

"In determining whether to stay a case pending reexamination, a court must consider the following factors: (1) whether a stay will simplify the issues in question and trial of the case[,] (2) whether discovery is complete . . . and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." Medicis Pharm. Corp. v. Upsher-Smith Laboratories, Inc., 486 F.Supp.2d 990, 993-94 (D. Ariz. 2007).[4] In addition, in making this determination, "[t]he Court must weigh the

---

[4] Although Medicis Pharm. includes "whether a trial date has been set" as part of the second factor, the Court believes that element is of little probative value (especially here, as it is this Court's general practice to set a trial date for civil cases only after all pre-trial litigation is complete). The important aspect of the second factor is simply the stage of the proceedings.

- 3 -

1  competing interests presented by a specific set of facts." Gladish v. Tyco Toys, 1993
2  U.S. Dist. LEXIS 20211, at *2-3 (E.D. Cal. 1993).
3      Furthermore, "[a] stay is particularly justified where the outcome of the
4  reexamination would be likely to assist the court in determining patent validity and, if the
5  claims were canceled in the reexamination, would eliminate the need to try the
6  infringement issue." In re Cygnus Telecommunications Technology, LLC, 385
7  F.Supp.2d 1022, 1023 (N.D. Cal. 2005) (citing Gould, 705 F.2d at 1342 ("One purpose of
8  the reexamination procedure is to eliminate trial of that issue (when the claim is canceled)
9  or to facilitate with the expert view of the PTO (when a claim survives the reexamination
10 proceeding).")).

11 **III.  ANALYSIS**

12     **A.  Stage of Litigation**

13     All of the parties acknowledge that the early stage of the MDL weighs in favor of
14 granting a stay.  (Dkt. #89, p.5; Dkt. #58, p.2 n.3).  The member cases in this MDL were
15 not fully consolidated in this Court until April 2008, and although the remaining parties
16 have already served their infringement and invalidity contentions pursuant to the Court's
17 August 19, 2008 Scheduling Order, fact discovery has yet to begin.  (Dkt. #73, pp. 2-3).
18 Notably, the Court's Scheduling Order explicitly makes all remaining discovery
19 contingent on the Court's decision on the instant Motion to Stay.   (Dkt. #73, p.3).  Thus,
20 as discovery is not complete and much pre-trial litigation remains, the present stage of the
21 MDL favors grating a stay.

22     **B.  Simplification of Issues For Trial**

23     Prior to the PTO's recent confirmation of all 160 claims of the '434 Patent, the
24 Infringement Defendants argued that (1) it is likely that most, if not all, of the claims
25 asserted in the MDL are invalid as currently written, (2) the results of the PTO's
26 reexamination proceedings will likely "render this entire effort futile," and (3) at the very
27 least, the PTO reexamination will streamline the remaining issues for trial.  (Dkt. #50, pp.
28 3, 5-6, 8).  Given recent events, those arguments are now somewhat dampened.

Undeterred, however, Defendants continue to assert essentially the same arguments with respect to the pending reexamination of the '072 Patent. The Infringement Plaintiffs, on the other hand, argue that "staying this case pending the reexamination could not result in the Patent Office resolving most of the issues in this case" because the PTO reexamination involves only one of the three patents in suit, and given the PTO's recent confirmation of the claims of the '434 Patent without amendment, there is only a remote chance that the PTO will cancel or amend any of the asserted claims in the '072 Patent. (Dkt. #58).

First, PTO statistics provide that there is only a 13% all-cancellation rate for patents subject to third-party requested ex parte reexamination. (Dkt. #89, Ex. F). However, the appropriateness of a stay does not depend on whether the stay can resolve the entire case. See In re Cygnus, 385 F.Supp.2d at 1024 ("If the USPTO cancels *any* of the 21 claims asserted in the two patents, infringement and validity issues that could potentially be raised in any of the multiple litigations consolidated before this court would be resolved.") (emphasis added). Second, PTO statistics also provide that there is a 59% chance that some of a patent's claims will be changed. (Id.). But the mere fact that in any given reexamination there is a 59% chance that the patent's claims will be changed, does not necessitate staying the action; otherwise every action that involved reexamination would warrant a stay. On the other hand, "[f]or those claims that survive reexamination, this court may have a richer prosecution history upon which to base necessary claim construction determinations or reconsideration." In re Cygnus, 385 F.Supp.2d at 1024; see also Medicis Pharm., 486 F.Supp.2d at 994 ("[A]ny review of prior art that the Court may conduct will be enhanced by the PTO's expert opinion.").

In addition, "[b]y granting a stay at this juncture, the parties will save the expense of litigating issues that the PTO's experts may render moot." Medicis Pharm., 486 F.Supp.2d at 994. Further, although Plaintiffs are correct that the Court can consider additional issues that the PTO cannot consider, such as prosecution laches and inequitable conduct, and the Court can take a more comprehensive approach than the PTO by

- 5 -

1  concurrently examining the validity of all three patents in suit, it is also true that
2  "reexamination by the PTO when issues relevant to prior art are involved is especially
3  helpful given the PTO's expertise." Brown v. Shimano American Corp., 18 U.S.P.Q.2d
4  1496 (C.D. Cal. 1991). And although the Infringement Plaintiffs argue that permitting a
5  stay pending reexamination would defeat the fundamental purpose of the MDL statute to
6  "promote the just and efficient conduct of such actions," 28 U.S.C. § 1407, "[b]y
7  permitting the USPTO to apply its expertise to the patents-in-suit, a stay of this action
8  may facilitate more consistent outcomes in the litigations that have been transferred to it –
9  precisely the goal of the multidistrict litigation scheme." In re Cygnus, 385 F.Supp.2d at
10 1024.

11 Here, however, "[m]ore compelling is plaintiff's contention that the reexamination
12 will not resolve everything." Enprotech Corp. v. Autotech Corp., 1990 U.S. Dist. LEXIS
13 2926, at *1-2 (N.D. Ill. 1990). Although the Court disagrees with Plaintiffs' contention
14 that courts should decline to stay actions when reexamination proceedings will not
15 eliminate *all* of the issues in the action (Dkt. #58, p.6), when, as here, reexamination
16 cannot address most of the issues involved in the litigation, the Court cannot find that
17 "there is little question that a stay would 'simplify the issues in question and trial of the
18 case.'" In re Cygnus, 385 F.Supp.2d at 1024. Only one of the three patents-in-suit, the
19 '072 Patent, is subject to reexamination. The '938 Patent is not subject to reexamination.
20 And more importantly, the PTO recently confirmed all 160 claims of the '434 Patent
21 without amendment. In addition, despite the fact that the PTO granted reexamination of
22 the '072 Patent on the basis that there is a "substantial new question of patentability" in
23 light of the asserted prior art, which is the basis for all grants of reexamination, the '072
24 reexamination involves four out of six of the same prior art that was asserted against the
25 '434 Patent in reexamination. Therefore, because reexamination of '072 Patent will not
26 resolve most of the issues in question or trial of the case, and in light of the PTO's recent
27 confirmation of all of the claims of the '434 Patent (a.k.a. "the seminal patent in these
28 actions") (Dkt. #51, p.1), the Court cannot find that whatever simplification of the issues

that may perhaps result from the PTO's reexamination of the '072 Patent favors granting a stay at this time.

### C. Prejudice

The Infringement Plaintiffs contend that the Court should deny the pending Motion to Stay because "[a]ny delay will necessarily prejudice LPL and Phoenix as the Plaintiffs in this litigation." (Dkt. #58, p.9). Specifically, Plaintiffs point to the fact that (1) "[t]he average re-examination takes 21 months," In re Columbia University Patent Litigation, 330 F.Supp.2d 12, 15-17 (D. Mass. 2004), (2) the '072 Patent was not granted reexamination by the PTO until September 10, 2008, and (3) delay may be compounded if Defendants submit the '938 Patent for consecutive reexamination.

Clearly, if there is prejudice to Infringement Plaintiffs, it arises primarily in the form of delay. Plaintiffs assert that the PTO reexamination could potentially result in delaying resolution of MDL member cases for numerous years (based on an average reexamination period of approximately two years, not including any delay involved if the reexaminations are appealed). But Plaintiffs' worries of seemingly indefinite delay appear overstated, especially in light of the PTO's recent completion of the '434 Patent reexamination. While Plaintiffs may be correct that the average reexamination takes 21 months, "reexaminations generally take from 6 months to 3 years." In re Cygnus, 385 F.Supp.2d at 1023. And Reexamination of the '434 Patent took only approximately thirteen months. (Dkt. #120). Moreover, reexamination of the '072 Patent has been underway for approximately six months (reexamination was granted September 10, 2008).[5] (Dkt. #96, p.2). In addition, the '072 reexamination is based on some of the same

---

[5] The Infringement Plaintiffs state that "requesting that the '072 Patent also be reexamined demonstrates how defendants can use a series of reexaminations as inappropriate delay tactics." (Dkt. #96, pp. 3-4). However, if Defendants truly wished to use reexaminations as inappropriate delay tactics, then they could have sought consecutive reexamination, rather than relatively concurrent reexamination, of the '072 Patent. On the other hand, Plaintiffs' allegation of inappropriateness would carry more weight in the hypothetical event that Defendants seek reexamination of the '938 Patent at this time or

1 prior art asserted in the '434 reexamination, and thus it is reasonable to assume that '072
2 reexamination may not take as long as the '434 reexamination. (Dkt. #89, Exs. C & D).
3       Plaintiffs also contend that a stay will result in their inability to realize income
4 from licensing their patents, speculate that Defendants might enter bankruptcy as a result
5 of the current financial crisis, and lament that potential witnesses' memories will continue
6 to fade over time. (Dkt. #58, pp. 9-10; Dkt. #96, p.5). First, it is unclear how the fading
7 of witnesses' memories prejudices Plaintiffs in particular; presumably witnesses'
8 memories do not rely on their affiliation with a particular party. Nonetheless, such a
9 consideration will always weigh against granting any sort of extended stay. Second, with
10 respect to Plaintiffs' inability to realize income, since "LPL's only business is licensing
11 and enforcing the patents-in-suit" and "LPL does not make, sell, or otherwise deal in any
12 products or services," "[a] stay will not narrow or exclude any legal remedy currently
13 available to LPL." (Dkt. #89, p.7); see Sorensen v. Black and Decker Corp., 2007 U.S.
14 Dist. LEXIS 66712, at *18 (S.D. Cal. 2007) ("If the PTO does not invalidate or otherwise
15 alter the claims of the patent, the Plaintiffs' legal remedy remains unaffected."). But
16 perhaps Plaintiffs' financial concerns stem primarily from Plaintiffs' additional concern
17 that the remaining Defendants might "go into bankruptcy during the protracted delay
18 associated with a stay pending reexamination." (Dkt. #96, p.5). However, Plaintiffs
19 submit nothing other than pure speculation to support their fears that the remaining
20 Defendants in particular might "not remain in business or go into bankruptcy." (Id.).
21       Nevertheless, while the delay involved in staying the MDL pending the '072
22 reexamination may not be exceedingly lengthy, the Court is hard pressed to find that a
23 stay would not prejudice Plaintiffs in light of the PTO's recent confirmation of all 160
24 claims of the '434 reexamination without any amendment. Therefore, based on the

---

waited until completion of the '072 reexamination before seeking reexamination of the '938 Patent.

totality of the circumstances, and for the reasons stated above, the Court cannot find that granting a stay of this MDL is warranted pending reexamination of the '072 Patent.

However, as a result of the Court's decision to issue a Suggestion of Remand to the United States Judicial Panel on Multidistrict Litigation, this MDL may soon be dissolved and the sole remaining member case remanded to the Eastern District of Texas. Therefore, the Court finds that a limited stay is appropriate pending resolution of the Court's Suggestion to Remand. As stated above, in the event that remand occurs, Defendants may presumably reurge the instant Motion to Stay before the transferor court.

**Accordingly,**

**IT IS HEREBY ORDERED** that the Motion to Stay (Dkt. #50) is DENIED.

**IT IS FURTHER ORDERED** that this action is stayed pending resolution of the Court's Suggestion of Remand.

DATED this 23rd day of February, 2009.

_____
Mary H. Murguia
United States District Judge